## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IDIL DALMAR, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANTONY J. BLINKEN, *et al.*, <br><br> *Defendants*. | No. 23-cv-3315 (DLF) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs filed this action under the Administrative Procedure Act, 5 U.S.C. § 706 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, to compel adjudication of their visa applications. Compl. 38–39, Dkt. 1. Before the Court is the defendants' motion to dismiss under the Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6) and the plaintiffs' motion for reconsideration. *See* Mot. to Dismiss at 2, Dkt. 7; Pl.'s Mot. for Reconsideration, Dkt. 10. For the following reasons, the Court will grant the defendants' motion and dismiss the petition. Accordingly, it will deny the plaintiffs' motion as moot.

## I.      BACKGROUND

### A.      Statutory and Regulatory Background

The Immigration and Nationality Act authorizes the issuance of visas to different categories of immigrants, including noncitizen spouses of U.S. citizens or lawful permanent residents. 8 U.S.C. § 1153(a). A U.S. citizen or lawful permanent resident initiates this process by filing a Form I-130, Petition for Alien Relative, with the United States Citizenship and Immigration Services. *Id.* § 1154. If approved, the beneficiary may apply for a visa with the status

of "immediate relative" of petitioner.  8 C.F.R. § 204.1(a); *see* 8 U.S.C. § 1201(a)(1); 22 C.F.R. § 42.41.

Part of the application process involves a consular interview.  22 C.F.R. § 42.62.  Following the interview, the consular officer must either issue the visa or refuse it under applicable law.  *Id.* § 42.81(a).  Officers may, however, request additional information from applicants if current information is "inadequate to determine the alien's eligibility."  *Id.* § 42.63(c).  As relevant here, officers may require applicants to provide additional information through Form DS-5535, Supplemental Questions for Visa Applicants.  *See* 60-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 88 Fed. Reg. 65,418 (Sept. 22, 2023).  If the applicant produces additional evidence "tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  22 C.F.R. § 42.81(e).

### B.     Factual Background

Five United States citizens filed Form I-130 Petitions for Alien Relative on behalf of their Somalian spouses.  Compl. ¶¶ 28–37.  After those petitions were approved, the beneficiary spouses completed consular interviews in July to September of 2023.  *Id.* ¶ 13.  Following those interviews, the spouses were given temporary § 221(g) refusal notices and asked to submit Form DS-5535 responses providing additional background information such as places of employment, travel, and social media accounts.  *Id.* ¶ 115–116.  After submitting the requested information, their applications remain in administrative processing.  *Id.* ¶ 117, 119.

Plaintiffs filed this action on November 5, 2023, seeking declaratory and injunctive relief to compel the State Department to adjudicate their cases under the Administrative Procedure Act, 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361.  Compl. at 38–39.  The defendants

moved to dismiss plaintiffs' complaint for failure to state a claim and lack of jurisdiction under Rules 12(b)(1) and 12(b)(6).  *See* Mot. to Dismiss at 2.

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because "mootness itself deprives the court of jurisdiction."  *Indian River Cnty. v. Rogoff*, 254 F. Supp. 3d 15, 18–19 (D.D.C. 2017).  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)); *see also* U.S. Const. art. III, § 2.  A case or claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3-4 (D.C. Cir. 2008)).

When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted).  A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C.

Cir. 2005) (internal quotation marks omitted).  A court that lacks jurisdiction because the claim is moot must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Id*. (citations omitted).

## III.  ANALYSIS

### A.  Mootness

Defendants argue the plaintiffs lack subject-matter jurisdiction because they already obtained the relief requested in their petition: a final adjudication of their immigrant visa applications. *See* Mot. to Dismiss at 5–8.  That is incorrect.

The complaint plainly alleges the plaintiffs received "temporary 221(g) refusal notices" and their visa applications remain in administrative processing without a final decision. Compl. ¶¶ 115, 119, 9. At the motion-to-dismiss stage, the Court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Although the defendants emphasize that plaintiffs' applications have been "refused," "[w]hile a visa application must be either granted or refused at an initial interview, that refusal is often not final. Instead, a

refusal may be entered for 'administrative processing,' and applicants may have an opportunity to provide additional information to establish eligibility." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) (quoting 9 FAM 306.2-2(A)(a)(2)(a); *Administrative Processing Information*, U.S. Dep't of State Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html).   Courts in this circuit have consistently held as much.  *See, e.g.*, *id.*; *Carter v. DHS*, No. 21-cv-422 (RCL), 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021); *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020).  The Court likewise concludes that visa application refusals for further administrative processing are not final agency actions.

### B.      Doctrine of Consular Nonreviewability

The Court also rejects the defendants' argument that the doctrine of consular nonreviewability bars the plaintiffs' suit.  *See* Mot. to Dismiss at 9–10.  The doctrine of consular reviewability has no application here.  "[T]he consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022); *see also Akrayi v. U.S. Dep't of State*, 22-cv-1289 (CRC), 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023).   As discussed *supra* in § III.A, temporary refusals for further administrative processing are not final agency action.

Moreover, the Court does not share the defendants' view that the D.C. Circuit's decision in *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021), expanded the doctrine of consular nonreviewability to administrative-processing claims.  *See Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523 at *5 (D.D.C. Feb. 7, 2024); *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 n.5 (D.D.C. Feb. 12, 2024).  Joining "[o]ther judges in this district,"

the Court noted in *Pourabdollah* that "Baan Rao's use of the word 'withhold'" did not sweep "in consular decisions to delay final adjudication on a visa application" and it occurred in the context of "a challenge to final visa denials and not to processing delays." *Pourabdollah*, 2024 WL 474523, at *5 (cleaned up). The Court incorporates that discussion here. The doctrine of consular nonreviewability thus does not bar this suit.

### C.    Unreasonable-Delay Claims

Although the Court rejects the defendants' threshold arguments, it concludes that the plaintiffs' APA and mandamus claims for unreasonable delay fail to state a claim.[1] The Court will assume without deciding that the plaintiffs have alleged that the defendants are subject to a discrete, required duty.[2] But the defendants have not suffered an unreasonable delay "so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

To evaluate whether an agency's delay is unreasonable, courts in this district apply the six-factor test set forth in *Telecommunications Research & Action Center ("TRAC") v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The *TRAC* factors are as follows:

---

[1] Courts review claims of unreasonable delay in processing immigration petitions according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017).

[2] As the Court previously held in *Pourabdollah*, a delay in deciding whether to grant or refuse a visa to a specific applicant "is clearly a discrete agency action" rather than a "broad programmatic attack." *Pourabdollah*, 2024 WL 474523, at *6 n.5 (quoting *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023)). Further, the Court is bound to follow the D.C. Circuit's holding that the APA "imposes a general but *nondiscretionary* duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–1100 (D.C. Cir. 2003) (emphasis added) (quoting 5 U.S.C. §§ 555(b), 706(1)).

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting *TRAC*, 750 F.2d at 80).  The *TRAC* factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'"  *Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).  Here, the balance of the factors favors defendants. [3]

---

[3] Contrary to the plaintiffs' assertions, it is not premature to adjudicate their unreasonable-delay claim at the motion-to-dismiss stage.  *See* Opp'n at 31–33, Dkt. 8.  Courts in this district routinely decide whether an agency's delay is unreasonable when processing claims at the motion-to-dismiss stage.  *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (collecting cases), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021); *Khan v. Blome*, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *4 (D.D.C. Nov. 29, 2022).  So long as a "record contains enough facts to evaluate the *TRAC* factors" at the motion-to-dismiss stage, "then a Court may appropriately decide to just that."  *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023) (*quoting Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).  This record—including the plaintiffs' 39-page complaint and 10 attachments to the complaint—satisfies that standard.

1.     *TRAC Factors 1 and 2*

The first two *TRAC* factors concern the length of the delay.   The factors are often considered together, *see, e.g., Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021), and the first *TRAC* factor is considered the "most important" of the six, *Core Commc'ns*, 531 F.3d at 855.   In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."   *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).   Both of these factors favor defendants.

"Congress has given the agencies wide discretion in the area of immigration processing," *Skalka*, 246 F. Supp. 3d at 153–54, and "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa application delay, *Sarlak*, 2020 WL 3082018, at *6.   Courts have permitted delays of over two years in other I-130 cases.   *See, e.g.*, *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *5 (D.D.C. March 28, 2024) (two year and three month delay); *Khan v. Bitter*, 23-cv-1576 (BAH), 2024 WL 756643, at *5 (D.D.C. Feb. 23, 2024) (29-month delay); *Eljalabi v. Blinken*, No. 21-cv-1730 (RC), 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (nearly two year delay).   Indeed, courts generally conclude that immigration delays "between three to five years are often not unreasonable." *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. 2023) (cleaned up).

The plaintiffs point out that 28 to 33 months have elapsed since they filed their I-130 petitions.   *See* Opp'n at 35.   But that is well within the time frame courts have permitted.   *See Rahman*, 2023 WL 196428, at *4.   In any event, the plaintiffs calculate the length of elapsed time incorrectly.   Instead of the initial petition, the clock starts with the "the last agency action"—in this case, the temporary refusals.   *See Barazandeh v. U.S. Dep't of State*, No. 23-1581 (BAH),

2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint."). The plaintiffs' claims were refused between September and October of 2023—only 2 months before they filed this suit. Compl., Ex. E, CEAC Online Case Statuses, Dkt. 1-5. Even if the Court considers the ensuing time, the plaintiffs have waited for less than a year. An eleven-month delay does not warrant judicial intervention.

The plaintiffs' arguments to the contrary are unpersuasive. They point to two statutory provisions—the District of Columbia Appropriations Act and 8 U.S.C. § 1571(b)—that purport to provide a "congressionally supplied yardstick." *Sarlak*, 2020 WL 3082018, at *6. This Court has previously rejected identical arguments in *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024). Neither statute creates a mandatory deadline for the State Department. *See id.* As previously explained, even if the District of Columbia Appropriations Act and § 1571(b) "add some weight in a plaintiff's favor for the second *TRAC* factor," that weight does not overwhelm the other circumstances weighing in favor of the defendants under the first two *TRAC* factors. *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022).

2.      *TRAC Factor 4*

The fourth factor also favors defendants. This factor considers the effect of prioritizing one agency action over others. *See TRAC*, 750 F.2d at 80. Like the first factor, the fourth *TRAC* factor also weighs heavily in the analysis. *Cf. Da Costa*, 643 F. Supp. 3d at 15 (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and

produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee*, 336 F.3d at 1100) (cleaned up).

In directing agencies which tasks to prioritize, courts should be reticent to intervene, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space." *In re Barr Labs., Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991) ("In short, we have no basis for reordering agency priorities. The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for us to hijack."). Such is the case here.

To grant the plaintiffs' request for relief "would simply reorder a queue of applicants seeking adjudication." *Tate*, 513 F. Supp. 3d at 149 (internal quotation marks omitted). As then-Judge Boasberg found, visa "[p]rocessing capacity is presently a zero-sum game, and granting the plaintiff's request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021) (citation omitted).

Although the plaintiffs are correct that the defendants have not alleged significant visa application backlogs like those that occurred during the COVID-19 pandemic, *see Tate*, 513 F. Supp. 3d at 149, judicial restraint is not limited to times of crisis. Indeed, any judicial order that requires "an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped." *Janay v. Blinken*, --- F. Supp. 3d ---, 2024 WL 3432379, at *13 (D.D.C. July 16, 2024) (quotation omitted). The defendants have properly pleaded as much.

Factor four thus adds to the scales already tipped in the defendants' favor.

3.     *TRAC Factors 3 and 5*

*TRAC* factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80.  These factors, often considered in tandem, *see, e.g., Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020), slightly favor the plaintiffs.

The plaintiffs argue the delay in processing their visa applications has caused them to "miss[] memories, milestones like the holiday season they are currently spending apart, and the simple shared joys of daily family life."  Compl. ¶ 176.   Additionally, they claim they are experiencing an "immense amount of financial strain."  *Id.* ¶ 125.  Financial risks are "inherent in the application process." *Da Costa*, 643 F. Supp. 3d at 15 (alterations and quotation marks omitted), and these allegations, standing alone, do not suggest the plaintiffs are in a worse position than a visa applicant who merely claims that his life has been put "on hold" by the visa delay. *Palakuru*, 521 F. Supp. 3d at 53.  But the plaintiffs also allege the delay is affecting their mental health and welfare, causing "severe emotional distress and psychological harm to the entire family."  Compl. ¶ 124.  On balance, these factors lean slightly towards plaintiffs, although they do not counteract the weight of *TRAC* factors one, two, and four.

4.     *TRAC Factor 6*

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi v. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023).  This factor favors neither party.  The plaintiffs allege that the defendants acted in bad faith by claiming there was a "queue" for visa applications, when visa applications can be prioritized in various ways based on petitioner's status.  Opp'n at 45.  But even if applications are not processed in a strict queue, processing visa applications is still a "zero sum game." *Khan*, 2021 WL 5356267, at *4.  Defendants did not act in bad faith in pointing out

that reality.  The plaintiffs further contend that defendants acted in bad faith by "redefin[ing]" temporary § 221(g) refusals as final.  Compl. ¶ 173.  Although this Court rejects the defendants' characterization of the administrative processing, a losing legal argument is not necessarily one made in bad faith.   On the existing record, the Court cannot draw a plausible inference of bad faith.  Thus, this factor "does not alter the Court's analysis."  *Fakhimi*, 2023 WL 6976073, at \*11

\*          \*          \*

Taken together, the *TRAC* factors heavily favor the defendants.  Accordingly, the Court concludes that the plaintiffs have failed to state a claim for unreasonable delay under the APA and are not entitled to mandamus relief.  The Court will dismiss Counts 2 through 5 of the Petition.[4]

### D.    Remaining APA Claim

The plaintiffs' final claim challenges the DS 5535 procedure under § 706(2) of the APA. Compl. ¶ 131, 135.  Ordinarily, agency actions are subject to judicial review if they are "arbitrary,

---

[4] The plaintiffs purport to bring Count 2 under § 706(2)(A).  On the Court's reading of the complaint, the plaintiffs' § 706(2)(A) claim is based on the defendants "unlawfully with[olding] agency action."  Compl. ¶ 141.  But a claim for "agency action unlawfully withheld or unreasonably delayed" arises under § 706(1), not § 706(2)(A).  5 U.S.C. § 706(1).  Even assuming the plaintiffs intended to plead a § 706(2)(A) claim, the challenged action must be a final agency action.  *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)).  Here, however, the plaintiffs concede that they "have yet to receive a final adjudication of their immigrant visa application," Compl. ¶ 9, and they rely heavily on the fact "there has been no final decision" in their opposition brief, Opp'n at 14.  As such, they fail to allege a crucial element under § 706(2)(A).

In addition, both Counts 2 and 3 assert a "withholding" claim under § 706(1).  *See* Compl. ¶¶ 136–163.  But plaintiffs fail, in any respect, to "distinguish[] between visa adjudications being 'unlawfully withheld' as opposed to 'unreasonably delayed' under § 706(1)."  *Tate*, 513 F. Supp. 3d at 147 n.6.  The Court's analysis in § III.C "of plaintiffs' claim that agency action was unlawfully delayed therefore addresses the entirety of plaintiffs' § 706(1) claims to compel agency action."  *Id.*

capricious, an abuse of discretion, or otherwise not in accordance with law" or fail to follow mandatory procedure.  5 U.S.C. § 706(2)(A), (D).  The APA precludes judicial review, however, if the challenged action is "committed to agency discretion by law."  *Id.* § 701(a)(2).  Under this standard, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).  That is the case here.

The plaintiffs argue that preventing them from submitting DS-5535 responses until after their consular interview "sabotages the ability of immigrant visa applicants to furnish all the information necessary to the consular officer at the visa interview."  Compl. ¶ 134.  But the relevant statutory provision, 8 U.S.C. § 1202, grants the agency broad discretion for determining the "form and manner" of visa applications.  *Id.* §1202(a).  When considering this very provision, the D.C. Circuit concluded that "the broad language of the statute suggests that the State Department policy is unreviewable."  *Legal Assistance for Vietnamese Asylum Seekers ("LAVAS") v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).  Although the *LAVAS* court addressed a different portion of the statutory language, its conclusion applies with equal weight to this provision.  Indeed, "[t]his section grants to the Secretary discretion to prescribe the [manner in] which aliens apply for immigrant visas without providing substantive standards against which the Secretary's determination could be measured."  *Id*.  The procedure for adjudicating visa applications—namely the submission of DS-5535 following consular interviews—is thus nonreviewable.

**CONCLUSION**

For the foregoing reasons, the Court grants the defendant's Motion to Dismiss, Dkt. 7, and denies the plaintiffs' Motion for Reconsideration, Dkt. 10, as moot.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

August 26, 2024